IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROSARIO GONZALEZ, et al., | ) | CASE NO. 05-CV-0005 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Judge John M. Manos |
| | ) | |
| RENT-A-CENTER, INC., | ) | |
| | ) | |
| Defendant. | ) | <u>MEMORANDUM OF OPINION</u> |

On January 3, 2005, Rosario Gonzalez and Hiram Rodriguez, plaintiffs, filed the above-captioned case against Rent-A-Center, Inc. ("RAC"), defendant, alleging state law claims of discriminatory and retaliatory discharge. Jurisdiction is based on diversity of citizenship. Plaintiffs are citizens of Ohio and defendant is a Delaware corporation, having its principal place of business in Texas. The amount in controversy allegedly exceeds $75,000.

On February 8, 2005, defendant filed its answer. On March 18, 2005, defendant filed a motion to dismiss and to compel arbitration. It was fully briefed. For the following reasons, the motion to dismiss is granted and the parties are compelled to arbitration.

## I. Facts.

Plaintiffs are former employees of defendant RAC. In April 2002, Gonzalez was hired as an account manager. By the Fall 2002, he was managing stores in Ashtabula, Ohio. In May 2003, Gonzalez hired Rodriguez as an account manager. Plaintiffs are of Puerto Rican descent.

Prior to starting their jobs at RAC, Plaintiffs were required to complete personnel forms. On Gonzalez' first day at RAC, his manager gave him a stack of papers to sign. The papers included, federal I-9 and W-4 forms, drug testing and insurance forms, an employee handbook and a Mutual Agreement to Arbitrate Claims ( "Agreement.")

The Agreement states, in pertinent part:

> The Company and I mutually consent to the resolution by arbitration of all claims . . ., past, present or future, whether or not arising out of my application for employment, assignment/employment, or the termination of my assignment/employment that the Company may have against me or that I may have against . . . the Company, . . . .
>
> * * *
>
> The claims covered by this Agreement include, but are not limited to: claims for wages or other compensation due; . . . tort claims, claims for discrimination (including but not limited to race, . . . national origin, . . . medical condition, handicap or disability) . . . .

Def. Exh. A.

On the signature page, immediately above the signature lines, the following language appeared in all capital letters:

> I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT; THAT I UNDERSTAND ITS TERMS; THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN THE COMPANY AND ME RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT; AND THAT I HAVE ENTERED INTO THE AGREEMENT AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY

>THE COMPANY OTHER THAN THOSE CONTAINED IN THIS AGREEMENT ITSELF.  I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL.
>
>I FURTHER ACKNOWLEDGE THAT I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH MY PRIVATE LEGAL COUNSEL AND HAVE AVAILED MYSELF OF THAT OPPORTUNITY TO THE EXTENT I WISH TO DO SO.

Id.

Gonzalez says that he signed the papers in approximately five minutes.  See Gonzalez Affid. ¶5, However, he acknowledges that he did not read the documents and had no idea what he was signing.  He did not know that he was giving up his right to pursue a claim in federal court.  The manager did not explain any of the forms to Gonzalez, although he told Gonzalez to take one form home to review and bring it back the next day.

On Rodriguez's first day, Gonzalez, as his manager, gave him a stack of papers to sign.  Gonzalez told him where to sign each document, including the same Arbitration Agreement that Gonzalez had signed a year earlier.  After only a few minutes, Rodriguez signed them all without reading them; he was told to quickly sign the documents so he could "get on the road and make deliveries."  See Gonzalez Affid. ¶ 18; Rodriguez Affid. ¶ 2.

In April 2004 Gonzalez and Rodriguez were terminated.

On January 3, 2005, plaintiffs filed their complaint alleging discrimination based on ethnic origin, disability, retaliation and willful and wanton misconduct. On March 18, 2005, defendant filed a motion to dismiss and to compel arbitration.  It attached the Agreements signed by the plaintiffs.

## II. Legal Standard/Law

This case is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 (1947), which

provides that "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement" may petition any federal district court, which would otherwise have jurisdiction over the underlying matter, "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Before compelling a party to arbitrate, a Court must engage in a limited review to determine whether the dispute is arbitrable, i.e., whether a valid agreement to arbitrate exists between the parties and whether the specific dispute falls within the substantive scope of that agreement. Javitch v. First Union Sec., Inc., 315 F.3d 619, 624 (6th Cir. 2003). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at issue is the construction of the contract language itself or an allegation of waiver, delay, or a similar defense to arbitrability. Moses H. Cone Memorial Hops. V. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

In Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 109 (2001), the Supreme Court held that agreements to arbitrate employment disputes as a condition of employment are generally enforceable under the FAA. The Sixth Circuit has consistently upheld the validity of pre-dispute mandatory arbitration agreements. McMullen v. Meijer, Inc., 355 F.3d 485 (6th Cir. Jan. 14, 2004), (reh'g denied March 18,2004) (citing Haskins v. Prudential Ins. Co. of Am., 230 F.3d 231, 239 (6th Cir. 2000)); Willis v. Dean Witter Reynolds, Inc., 948 F.2d 305, 310 (6th Cir. 1991). It is well settled that judicial protection of pre-dispute arbitral agreements extends to agreements to arbitrate statutory employment discrimination claims. McMullen at 489, (citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991)); Willis, 948 F.2d at 312. Arbitration of statutory claims is appropriate because "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights

-4-

afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum." Gilmer, 500 U.S. at 26 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985)). Furthermore, the Sixth Circuit held that "a party is generally chargeable with knowledge of the existence and scope of an arbitration clause . . .signed by that party, in the absence of fraud, deception, or other misconduct that would excuse the lack of such knowledge." Haskins at 235; citing Beauchamp v. Great West Life Assurance Co., 918 F.Sup. 1091, 1098 (E.D. Mich. 1996).

In Ohio, once a party has signed an agreement, it is presumed that he has accepted its terms. Scovill v. WSYX/ABC, Sinclair Broadcast Group, Inc., 312 F.Supp.2d 955 (S.D. Oh 2004). The Ohio Supreme Court observed: "It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written." Robbins v. Country Club Retirement Center IV, Inc. 2005 WL 678765 (Ohio App. 7 Dist *4 March 17, 2005); citing McAdams v. McAdams, 80 Ohio St. 232, 240-41 (1909), quoting Upton v. Tribilcock, 91 U.S. 45, 50 (1875). Furthermore, the law does not require an arbitration agreement to be explained to new hires. See Robbins at *5 (quoting ABM Farms, Inc. v. Woods, et al., 81 Ohio St.3d 498 (1998)(the Court stated that an "unsophisticated farmer" should have read the contract to discover the arbitration clause.))

### III. Analysis

**A. Whether there is a Valid Agreement**

The defendant argues that under Ohio law the Plaintiffs knowingly and voluntarily signed the Agreement. Plaintiffs contend that the Agreement is unenforceable for the following reasons: 1) the

Plaintiffs lacked experience, background and education; 2) they were rushed into signing the Agreement; 3) it was unclear and difficult to comprehend; 4) it was lacking in consideration; 5) it is unenforceable due to the totality of the circumstances; 6) it is unenforceable because there was no mutual assent; and 7) it is unenforceable because it is an adhesion contract.

Plaintiffs rely on Walker v. Ryan's Family Steak Houses, Inc., 400 F.3d 370 (6th Cir. 2005) that held the following factors must be considered by a court in evaluating whether a plaintiff has knowingly and voluntarily waived his right to pursue employment claims in court:  1) plaintiff's experience, background and education; 2) the amount of time the plaintiff has to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; 3) the clarity of the waiver; 4) the consideration for the waiver; as well as 5) the totality of the circumstances.

Defendant counters that Walker can be distinguished.  In Walker, former employees filed a class action suit against their former employer  for not paying proper wages.  The employer responded by filing a motion to dismiss the case and compel arbitration.  The Court evaluated the above five factors to find that the agreement to arbitrate was unenforceable.  However, as the defendants point out, there are key facts in Walker that are not present here.  In Walker, the employer discussed the arbitration agreement with the plaintiffs and provided inaccurate and misleading information, allegedly in an effort to speed up the process and discourage plaintiffs from seeking counsel.  Id. at 382.  Here, there is no allegation that RAC made any misrepresentations to Plaintiffs.

Also, the Walker plaintiffs were provided with an arbitration agreement that was hidden in a 12-page employment application.  Id. at 373.  Here, the Agreement was not hidden in another document, but was a separate four-page document with the words "Mutual Agreement to Arbitrate

-6-

Claims" written in bold print across the top of the first page. Defendant argues that there are no facts to suggest that Plaintiffs were misled regarding the contents or nature of the Agreement, or otherwise unaware of the existence of the document.

### i. Whether Agreement was Knowingly and Voluntarily Executed.

As to Plaintiffs first three arguments (that they lacked experience, background and education; they were rushed into signing; and the Agreement was unclear and difficult to comprehend), Ohio law does not allow these reasons to invalidate a contract. "Ignorance of the contents of a contract expressed in a written instrument does not . . . affect the liability of one who signs it . . . ." Haskins at 231, 239 (quoting 17A AmJur.2d Contracts § 224 (1991). Plaintiffs admit they signed the Agreement but argue that their lack of education and knowledge of the English language hindered their understanding. Plaintiffs are required to show fraud, deception or other misconduct by defendant in order to prove the Agreement invalid. Walker at 382-384; Haskins at 235. Because Plaintiffs have not shown any of these factors, the Court finds that the Agreement was knowingly and voluntarily signed by the Plaintiffs.

### ii. Consideration/Mutual Assent.

Plaintiffs also argue there was no consideration or mutual assent. An agreement to arbitrate is binding and enforceable as is any other contract. Juhasz v. Costanzo, 144 Ohio App.3d 756, 761 (2001); Ohio Rev. Code §2711.01(A). A contract is generally defined as a promise or set of promises actionable upon breach. Kostelnik v. Helper, 96 Ohio St.3d 1 (2002). The three elements of a contract are offer, acceptance and consideration. Id.

Consideration requires mutuality of obligation; it is a "bargained for" legal benefit or detriment.

Id. In order for consideration to exist, there must be a benefit to the promisor or a detriment to the promisee. Id. Without consideration, there can be no contact. However, the benefit or detriment need not be great; they need only be something regarded by the promisor as beneficial enough to induce his promise. Id.

Here, both parties agreed to arbitrate various matters. Additionally, the defendant agreed to hire the plaintiffs based upon his agreement to arbitrate. There are benefits and detriments flowing between the parties. Therefore, consideration exists and both parties are obligated. **iii. Adhesion Contract**.

Plaintiffs argue that the Agreement is unenforceable because it is an adhesion contract. An adhesion contract exists when a party with little or no bargaining power is required to submit to terms to which he has no choice. See Nottingdale Homeowners' Assn., Inc. V. Darby, 33 Ohio St.3d 32, 37, fn 7; Hilb, Rogal & Hamilton Agency of Dayton, Inc. v. Reynolds, 81 Ohio App.3d 330, 339 (1992). Plaintiffs argue that the Agreement is an adhesion contract because they had little meaningful opportunity to seriously challenge the agreement without foregoing their employment. This unequal bargaining power, they claim, rendered the agreement unconscionable.

The United States Supreme Court held that the "mere inequality of bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991), See also, Beauchamp v. Great West Life Assurance Co., 918 F.Supp. 1091, 1098 (E.D. Mich. 1996) (responding to a balance-of-power argument, the court stated that "[u]nder plaintff's theory, practically every condition of employment would be an 'adhesion contract' which could not be enforced because it would have been presented to

-8-

the employee by the employer in a situation of unequal bargaining power on a 'take it or leave it' basis). The Court concludes the Agreement was not an adhesion contract.

### B. Whether the Agreement covered issues to be litigated.

Plaintiffs bring state law claims of national origin discrimination, handicap discrimination, retaliation and willful and wanton misconduct. Defendant argues the Agreement contains specific language stating that discrimination/retaliation and tort claims arising out of employment and/or termination must be arbitrated. The Court agrees. All of these claims are included in the Agreement as arbitral. Therefore, the Court grants the defendant's motion to dismiss and compels arbitration.

## IV. Conclusion

For the foregoing reasons, defendant's motion to dismiss is granted and the parties are compelled to arbitrate the claims pursuant to the provisions of the Agreement.

IT IS SO ORDERED.

/s/ John M. Manos
UNITED STATES DISTRICT JUDGE

Issued: June 7, 2005